UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -vs- | : | No. 3: 23-CR-26-05 |
| RAHMEL WIGFALL, aka "Inf," | : | (JUDGE MANNION) |
| Defendant | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Rahmel Wigfall, is presently scheduled for sentencing before this Honorable Court on September 25, 2024, after having entered a plea of guilty to Count 1 of the Indictment, the charge of Conspiracy to Distribute and Possess with Intent to Distribute more than 400 Grams of Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The government hereby submits this sentencing memorandum as an aid to the Court in rendering a just sentence in this matter.

Pursuant to the terms of the plea agreement in this case (Doc. 457), the parties agreed to recommend that at least 400 grams of fentanyl, but less than 1.2 kilograms of fentanyl, are attributable to the defendant for the purposes of sentencing. *Id.* at ¶12.

## The Offense:

The offense conduct is set forth in detail in the PSR.  (*See* ¶¶ 8-16).  This investigation began on February 18, 2021, after the drug overdose death of a twenty-eight-year-old woman in Wilkes-Barre. (¶ 8).  The overdose victim was found alone in her vehicle with the engine still running.  Three small blue pills – each stamped "M-30" – were found inside her vehicle.  The investigation would reveal that the victim had purchased four small blue pills from a Wilkes-Barre based drug dealer and that she died after ingesting just one of the pills.

As the investigation progressed, investigators learned of a wide-ranging drug trafficking conspiracy involving the trafficking of fentanyl pills sent via mail from Arizona to Pennsylvania.  The indictment presently before the Court charges a conspiracy beginning in January 2020 through the date of the indictment – February 14, 2023.  Many of the defendants in this indictment were ordering large quantities of fentanyl pills from, and transmitting cash payments to, one of several fentanyl sources in Arizona, including Davon Beckford and Tyla Griffin (both charged in a separate indictment), Shane Burns and/or Burns' girlfriend, Christina Patacky-Beghin.  Packages containing fentanyl

pills were then sent to Pennsylvania from Arizona via the U.S. Postal Service.

The pills were then distributed by conspirators in MDPA.

Rahmel Wigwall, aka "Inf," was a distributor of fentanyl pills in the Luzerne County area.  His source for the pills was Devon Beckford in Arizona.  Wigfall sent money for payment of the pills directly to Beckford via "Cash App." Wigfall also provided money to co-defendant and co-conspirator Mercedes Smith, Beckford's money collector, which Smith then provided to Beckford. Beckford would then mail packages containing fentanyl pills to addresses associated with Wigfall in the Wilkes-Barre area.  One of those addresses was the residence of co-defendant Shayna Colon Acosta, a drug addict.  Wigfall exploited Colon Acosta's drug addiction by paying her with pills in exchange for allowing him to use her address and residence as a place to receive packages of fentanyl pills sent via mail from Arizona.  Text messages and mail tracking receipts found in Beckford's phone confirm the transactions between Wigfall and Smith, and Wigfall and Beckford.

Upon receipt of the pills from Beckford, Rahmel Wigfall distributed the pills in the Luzerne County area.

The plea agreement indicates that Wigfall was accountable for the distribution, and possession with intent to distribute, between 400 grams to 1.2 kilogram of fentanyl.  The drug weight is based on the price per pill charged by Beckford and the typical quantity of pills mailed by Beckford from Arizona.

### The Presentence Report:

The U.S. Probation Office prepared a Presentence Investigation Report (PSR) in this case.  The PSR indicates that the defendant's total offense level is **27** and the criminal history category is **V**, resulting in an advisory guideline range of **120 to 150 months**.  PSR ¶ 64. There is a mandatory minimum sentence of **120 months** which applies in this case. PSR ¶ 63.

The PSR indicates that the defendant has prior criminal convictions for the following offenses:

### ¶ 33 Unauthorized Use of a Motor Vehicle (Arrested in 2004).

On February 16, 2004, Rahmel Wigfall operated a stolen vehicle in

Exeter Township, PA.  When officers attempted to stop the vehicle, Wigfall did not stop until he rammed a second police vehicle.

**¶34 Criminal Attempt – Recklessly Endangering Another Person (2 Counts) and Criminal Attempt – Fleeing or Attempting to Elude an Officer (Arrested in 2004).**

Details are set forth in ¶ 33 above.

**¶35 Escape (Arrested in 2006)**

On July 7, 2005, Rahmel Wigfall was arrested for outstanding warrants after he was observed consuming alcohol and possessing illicit drugs in front of 296 Brown Street, Wilkes-Barre. As the defendant was about to be handcuffed, he fled through the home to the backyard.  The subject hopped several fences into a wooded area and evaded arrest.

**¶36 Simple Assault (Arrested in 2009)**

On January 23, 2009, Rahmel Wigfall and several others assaulted Allende Frias and Reina Matias at 324 North Empire Court, Wilkes-Barre.  Allende Frias was stabbed during the assault.

**¶ 37 Manufacture, Delivery, or Possession with Intent to Deliver a Controlled Substance (Arrested in 2009)**

On June 23, 2009, Rahmel Wigfall sold 100 packets of heroin to a confidential informant at the Red Roof Inn, Wilkes-Barre.  The defendant attempted to evade arrest by running into a three-lane highway.

**¶38 Manufacture, Delivery, or Possession with Intent to Deliver a Controlled Substance (Arrested in 2014)**

In January 2014, Lackawanna County detectives intercepted multiple drug-related conversations between a confidential source and Rahmel Wigfall.  On January 27, 2014, a controlled purchase of heroin from Rahmel Wigfall was conducted on Meadow Avenue in Scranton.  A search of his person, subsequent to arrest, resulted in the seizure of $494 and 150 glassine baggies of heroin.

¶39 Manufacture, Delivery, or <u>Possession with Intent to Deliver a Controlled Substance and Recklessly Endangering Another Person (Arrested in 2016)</u>

On September 29, 2016, Rahmel Wigfall and Jamal Morrison sold a quantity of heroin to a confidential informant at a Convenient Mart in Scranton.  When detectives attempted to arrest the suspects after the transaction, Rahmel Wigfall put his car in reverse and attempted to flee the scene.  He struck a parked vehicle and was immediately apprehended.  Detectives seized 80 packets of heroin from inside Wigfall's underwear.

<u>Note</u>: The defendant committed the *present drug trafficking offense* while under a criminal justice sentence for the drug trafficking offense set forth in ¶ 39.

The Criminal History Category here is V.

<u>The Sentencing Process:</u>

District courts engage in a familiar three-step process when

sentencing criminal defendants:

A district court must begin the process by first calculating the applicable sentencing guidelines range. After that initial calculation, the court must then rule on any motions for departure and, if a motion is granted, state how the departure affects the guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the guidelines.

*United States v. Tomko,* 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

As indicated, in the PSR, the U.S. Probation Office determined that the defendant's total offense level is **27** and his criminal history category is **V,** resulting in an advisory guideline range of **120 to 150 months.**

### The Sentencing Factors:

Under the sentencing statute, the sentence to be imposed needs to reflect the seriousness of the offense, promote respect for the law, provide for just punishment, deter others from engaging in similar conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

### Fentanyl is Killing Americans at an Unprecedented Rate:

Here, the defendant is responsible for the distribution, and possession with intent to distribute, between 400 grams and 1.2 kilograms of fentanyl.  The crime is serious.  Fentanyl is a highly addictive and dangerous substance.  The amount for which the defendant is accountable is very significant, particularly when one considers that the use – literally – of just a few grains or specks of

fentanyl can result in overdose or death.  In fact, the investigation in the present matter began with the accidental overdose death of a twenty-eight-year-old woman in Wilkes-Barre who ingested one small pill containing fentanyl.

More than 1 million people have died since 1999 from a drug overdose.[1]  In 2021, 75% of drug overdose deaths involved an opioid, including prescription opioids, heroin, and fentanyl.[2]  Overdoses involving opioids killed more than 80,000 people in 2021 and nearly 88% of those deaths involved synthetic opioids like fentanyl.[3]

Provisional data shows that drug overdose deaths in the United States surpassed 100,000 in 2022.[4]  Fentanyl was responsible for 73,654 of those deaths.[5]  Fentanyl deaths have increased every year for the past decade.[6]

In April 2022, DEA administrator Anne Milgram outlined the current fentanyl overdose threat and stated, "*Fentanyl is killing*

---

[1] Data Overview | Opioids | CDC
[2] *Id.*
[3] *Id.*
[4] Provisional Data Shows U.S. Drug Overdose Deaths Top 100,000 in 2022 | Blogs | CDC
[5] Are fentanyl overdose deaths rising in the US? (usafacts.org)
[6] *Id.*

*Americans at an unprecedented rate.* Already this year, numerous mass-overdose events have resulted in dozens of overdoses and deaths. Drug traffickers are driving addiction, and increasing their profits, by mixing fentanyl with other illicit drugs.  Tragically, many overdose victims *have no idea* they are ingesting deadly fentanyl, until it's too late."[7]  (This is precisely what happened in the present investigation. The accidental overdose victim in Wilkes-Barre thought she was ingesting a Percocet pill.)

According to the Pennsylvania Attorney General's Office, the opioid epidemic is the number one public health and public safety challenge facing Pennsylvania.[8]  Pennsylvania's overdose death rate is 71.9% higher than the national average overdose death rate.[9]  Over 6% of nationwide overdose deaths occur in Pennsylvania.[10]  As this Court is well aware, the opioid epidemic continues to impact the Middle District

---

[7] https://www.dea.gov/press-releases/2022/04/06/dea-warns-increase-mass-overdose-events-involving-deadly-fentanyl
[8] Opioid Battle – PA Office of Attorney General
[9] Drug Overdose Death Statistics [2023]: Opioids, Fentanyl & More (drugabusestatistics.org)
[10] Drug Overdose Death Statistics [2023]: Opioids, Fentanyl & More (drugabusestatistics.org)

of Pennsylvania.

In August 2023, the Pennsylvania Department of Health issued their findings regarding fatal and non-fatal overdoses in Pennsylvania in 2021.[11]  In 2021, 5,356 drug overdose deaths occurred in Pennsylvania and 85% were confirmed to be opioid related.[12]

Importantly, for every drug overdose that results in death, there are many more nonfatal overdoses.[13] People who have had at least one overdose are more likely to have another.[14] Between January 1, 2018, and July 15, 2023, Pennsylvania emergency service personnel administered 89,360 doses of Naloxone.[15]  During that same time period, there were 52,570 emergency room visits for opioid overdoses.[16] Accordingly, there are scores of individuals living with addiction and committing crimes to support their habits. Crime increases when

---

[11] Pennsylvania Overdose Data Brief 2021.pdf (pa.gov)
[12] Pennsylvania Overdose Data Brief 2021.pdf (pa.gov)
[13] Understanding Drug Overdoses and Deaths | Drug Overdose | CDC Injury Center
[14] Understanding Drug Overdoses and Deaths | Drug Overdose | CDC Injury Center
[15] Pennsylvania Opioids | PA Open Data Portal
[16] Pennsylvania Opioids | PA Open Data Portal

addicts deplete their savings and bargain away their possessions to support their habit.

Interviews of drug users and treatment personnel indicate that users often experience multiple drug overdoses in the course of their drug use, and "widespread naloxone availability has resulted in many lives saved."[17]  In addition to the overdoses, the economic and social costs to the community are overwhelming.  Fentanyl, heroin, and other opioids tear apart families, and the community is left to support loved ones left behind.  It has impacted families across all racial groups, geographic regions and socioeconomic classes.[18]

This Court should consider these statistics and the havoc that fentanyl and the other opioids are wreaking in our community when it imposes its sentence in this case.

Here, Rahmel Wigfall, known as "Inf," was part of a wide-spread fentanyl trafficking conspiracy that wreaked havoc in our community.  The conspiracy in which he participated was responsible for distributing thousands of fentanyl pills on the streets of Northeastern Pennsylvania.

---

[17] *Id.*

[18] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7829093/

Wigfall's prior criminal history is very concerning.  He has a criminal history including violence, assault, escape and fleeing from the police.  He has three prior drug-trafficking convictions.  Further, he committed the *present* offense while under a criminal justice sentence for a *previous* drug trafficking offense.  Previous sentences of incarceration have failed to deter him – his drug trafficking activities escalated, and he continued to engage in drug trafficking – no matter the damage he caused to the community.

From the government's perspective, the important factors set forth in 18 U.S.C. §3553(a) which the Court must consider in imposing a sentence on this defendant include the need for the sentence to:

- reflect the seriousness of the offense,

- promote respect for the law,

- provide just punishment for the offense,

- afford adequate deterrence to criminal conduct and

- protect the public from further crimes of the defendant.

(*See* 18 U.S.C. § 3553(a)).

There is a 120-month mandatory minimum sentence in this case.

Based on the above, the government recommends that this Court impose a sentence which is within the advisory guideline range of **120 to 150 months**

Respectfully submitted,

GERARD M. KARAM
United States Attorney

By: /s/ *ROBERT J. O'HARA*
ROBERT J. O'HARA
Assistant U.S. Attorney

Date:  September 20, 2024

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on September 20, 2024, she served a copy of the attached:

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

By email to:

Attorney David Cherundolo
Counsel for the Defendant

<u>/s/ Terri L. Pendolphi</u>
Terri L. Pendolphi
Legal Administrative Specialist

14